Wright & G...
Attorne...

4700 Mueller Blvd., Suite 200
Austin, Texas 78723

HEIDI A. COUGHLIN

Octobe...

> Application granted. A conference has been scheduled for October 30, 2025 at 10:00 a.m. to be held in Courtroom 520 of the White Plains courthouse. On or before October 22, 2025, the parties shall supplement their letter with copies of the discovery demands and responses at issue, for the Court's consideration. The parties are directed to continue to meet and confer and shall endeavor to resolve their discovery disputes without the Court's intervention.
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated: White Plains, New York
>       October 17, 2025

VIA ECF

Honorable Philip M. Halpern, U.S.D.J.
United States District Court for the Southern D...
300 Quarropas St., Courtroom: 520
White Plains, New York 10601-4150

Re: *Blanchard v. Kyndryl Holdings, Inc., Case No. 7:25-cv-2971*

Your Honor:

Pursuant to Rule 4(D) of the Court's Individual Practices, Plaintiff Randall Blanchard and Defendant Kyndryl Holdings Inc. ("Kyndryl") present this joint pre-motion letter and now requests a pre-motion conference.

I. **Nature of the Case**

In June 2024, Plaintiff Blanchard and four other plaintiffs filed suit against International Business Machines Corporation ("IBM") and Kyndryl, asserting age discrimination claims under the Age Discrimination in Employment Act of 1967 ("ADEA"). In April 2025, this Court granted IBM and Kyndryl's motion to sever, and this separate action commenced.

Plaintiff Blanchard asserts that his termination by Kyndryl— at the age of 61, after 35 years of employment by Kyndryl and IBM— was the result of a long-standing ageist scheme that Kyndryl carried over from IBM after Kyndryl was spun off as a separate company in 2021.

II. **Meet and Confers**

Plaintiff and Kyndryl have conferred regarding discovery:

- **July 21, 2025** - The parties exchanged emails regarding scope, timing, and potential objections, and Plaintiff granted Kyndryl a 10-day extension to respond to Plaintiff's First Request for Production.

- **July 23, 2025** – The parties exchanged emails, and both parties granted mutual 14-day extensions.
- **September 2, 2025** – The parties exchanged emails, and Plaintiff granted a 7-day extension to respond to Plaintiff's First Set of Interrogatories.
- **September 10, 2025** –The parties requested a four-month extension of the discovery period.[1]
- **September 18, 2025** – Plaintiff's counsel sent a letter to Kyndryl's counsel, outlining Plaintiff's concerns with Kyndryl's responses.
- **October 1, 2025** - The parties had a 30-minute call to discuss Kyndryl's responses.
- **October 8, 2025,** The parties had a 30-minute call to discuss discovery responses. .

### III. Plaintiff's Position on Current Discovery Disputes

Plaintiff is seeking to file a motion to compel for three reasons.

*First*, until October 6, Kyndryl had produced **zero documents** in response to Plaintiff's discovery requests, despite the fact that Plaintiff submitted his First Request for Production[2] over three months ago on June 30th—the very same day that this Court entered the Discovery Plan and Scheduling Order. On October 6—after Plaintiff sent Kyndryl a draft of this letter—Kyndryl produced 57 documents. While Plaintiff appreciates Kyndryl finally engaging in the discovery process, significant issues remain with Kyndryl's belated production. For example, Kyndryl's initial response to Plaintiff's First Request for Production included over 55 pages of non-specific objections[3] to the requests and vague commitments to search and produce responsive documents at some unspecified future date. [4] Plaintiff seeks to compel Kyndryl to commit to a set schedule for future production, including scopes for search inquiries.

*Second,* in the limited number of requests Kyndryl has agreed to perform searches for, Defendant has improperly narrowed and restricted the *scope* of its searches. For example, Plaintiff seeks production of documents relating to Defendant's Resource Actions,[5] ongoing efforts to

---

[1] On September 24, 2025, this Court denied the parties' joint request for a four-month extension of the discovery period and granted instead an extension until December 12, 2025.
[2] Plaintiff's First Request for Production is attached as Exhibit A.
[3] Defendant's Response to Plaintiff's Request for Production is attached as Exhibit B.
[4] Defendant referred to 10 documents produced in compliance with Pilot Discovery Guidelines for the SDNY. However, those documents were incomplete and not responsive to Plaintiff's First Request for Production.
[5] RQPD #4, 6, 8, 9, 29, 31, 65, 66, 76, 77, 78, 79, 80, 82, 83

reduce the age of its workforce,[6] and the hiring of younger workers.[7] All of these requests are central to Plaintiff's complaint. But Kyndryl has stated that it will search for documents related only to Band 9/10 Sales Partners. This artificial restriction on scope is inconsistent with Kyndryl's own documentation regarding Blanchard's Resource Action. At the time of separation, Kyndryl provided Plaintiff with a list of the ages and the various different positions of employees being laid off.[8] This list references 420 anonymous persons and their respective job titles. The document also makes clear that "Kyndryl has conducted other programs [and that] additional *disclosures are available upon request.*" Yet in their discovery responses, Kyndryl seeks to limit its searches to a small subset of this group, specifically only Band 9/10 Sales Partners. These types of arbitrary limitations on the scope are improper, and Plaintiff would seek to compel Kyndryl to expand the scope of its search for all responsive information and compel production of the same.

*Third,* given Kyndryl's blanket objections to all of Plaintiff's requests, it is unclear which documents Kyndryl is claiming are not currently in its custody or control. It is Plaintiff's belief that all documents comprising the business operations of Kyndryl's predecessor organization inside of IBM (primarily Global Technology Services and it's various Sales and Support organizations) would have migrated to Kyndryl as part of the 2021 spin-off. However, Kyndryl counsel has been unable to confirm or deny this position in any of the parties' meet-and-confers. Thus, Plaintiff asks for this Court to direct Kyndryl to confirm what requested documents are in its control, and what documents are in the control of IBM, so that third-party subpoenas can be issued in a timely manner.

**IV.     Kyndryl's Position on Current Discovery Disputes**

---

[6] RQPD #13, 15, 19, 21, 23, 27, 33, 35, 37, 41, 44, 49, 53, 57
[7] RQPD #25, 39, 55
[8] *See* Exhibit C.

At the pleading stage, the Court severed this case from Plaintiff's counsel's multi-plaintiff case against IBM. Dkt. 1. In doing so, the Court explained that Plaintiff did not plausibly allege "any connection between the personnel decision making at IBM and Kyndryl" or that "IBM had any control over, or participated in any way with, Kyndryl's personnel decision making. . ." Dkt. 1 at 4-5. Yet Plaintiff has elected to engage in discovery as if the severance order does not exist and to do so without regard for the relevance and proportionality requirements under Rule 26.

More than half of Plaintiff's 83 Requests for Production ("RFPs") relate to historical events and practices at IBM. The RFPs seek documents dating back as far as 10 years—long before Kyndryl even existed. And even though this is a single-plaintiff case involving Kyndryl's decision to select Plaintiff (and others) for separation from two dozen Sales Partners, Plaintiff is pursuing sprawling class-like discovery. It covers all reductions in force at Kyndryl (and apparently IBM), regardless of the timeframe, business unit, geography, decisionmakers, or criteria involved with those other employment decisions. Indeed, during the parties' October 8, 2025 meet-and-confer, Plaintiff disclosed (and the Requests confirm) that Plaintiff is far less interested in discovery about the decisionmakers and selection criteria that led to Plaintiff's termination than the alleged "ageist scheme" at IBM that was the subject of extensive litigation many years ago.

Against that background, it is unclear from Plaintiff's discovery letters and discussions what he seeks to compel because he has declined to have a fulsome and practical conversation about the Requests. For instance, one request seeks "All documents, draft documents, and communication concerning rebalance(ing), remix(ing) or refresh(ing) the Kyndryl workforce." RFP 13. Plaintiff has not meaningfully engaged with Kyndryl to narrow this request in any way.

Plaintiff's suggestion that Kyndryl has not engaged in discovery is incorrect. On August 13, 2025, Kyndryl responded to Plaintiff's Requests. Kyndryl also served Interrogatory Responses on September 11, 2025, which identified Becky Culleton, Stephanie Marks, Soneel Raj, and Thomas Scheel as the individuals involved in the decision-making process for the selection of

4

Plaintiff. Absent any engagement from Plaintiff (who did not even attempt to confer with Kyndryl until September 18), Kyndryl proceeded to collect ESI from relevant custodians (including all the decisionmakers noted above, Mr. Blanchard and his direct supervisor, Timothy Mund) and crafted search terms from Plaintiff's RFPs. Kyndryl informed Plaintiff's counsel of the custodians and search terms and that it is currently reviewing nearly 43,000 documents, and the resulting production of any relevant documents should be complete in approximately three weeks.

Plaintiff asserts that Kyndryl produced "zero" documents prior to October 6. That is misleading because Kyndryl first produced documents nearly a year ago, prior to the court-ordered mediation. Kyndryl also produced documents related to Plaintiff's comparators (Sales Partners) who were considered for the reduction in force. On October 6, 2025, Kyndryl produced an additional 1,748 pages of documents, which included: the worksheet identifying the Bands 9 and 10 Sales Partners identified for consideration in the role redesign that impacted Mr. Blanchard, the WorkDay profiles for all individuals identified along with Plaintiff; and additional documents related to the resource action that resulted in Plaintiff's separation.

Plaintiff asserts that Kyndryl is "artificially" limiting its review to issues related to Band 9 and 10 Sales Partners, but there is nothing artificial about focusing discovery on the materials that explain why Kyndryl selected him (and others) for separation from among his cohort of Sales Partners. The documents already produced (i) show that Plaintiff was compared against other Band 9/10 Sales Partners, (ii) explain the criteria for selection, and (iii) list the decisionmakers who made and approved the decision and who are among the custodians being searched right now. As explained above, Kyndryl disagrees that discovery in this case should focus on every reduction in force that has occurred at Kyndryl or IBM's alleged historical practices.

Finally, Plaintiff complains that Kyndryl has not explained the categories of documents that Kyndryl ported from IBM after the spin-off. However, during our October 8th meet and confer, Kyndryl clearly stated that there is no way to answer this question in the abstract and Kyndryl also

stated that not all IBM documents came over with Kyndryl. Of course, Kyndryl will produce relevant documents that hit upon the search terms for its custodians whether those documents originated at IBM (and were ported to) or originated at Kyndryl.

                    Respectfully submitted,

                    */s/ Heidi A. Coughlin*
                    Heidi A. Coughlin

cc: All Counsel of Record (via ECF)